IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14-CV-00126-RLV-DSC

| | |
|---|---|
| TINA WRIGHT, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **ORDER AND MEMORANDUM** |
| ) | |
| HARTFORD LIFE & ACCIDENT ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 5).

**I. PROCEDURAL AND BACKGROUND FACTS**

Defendant Hartford Life and Accident Insurance Company ("Hartford") is in the business of administering long-term disability ("LTD") insurance programs as "employee welfare benefit plans" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Compl., ¶3). ProBuild Holding, Inc. ("ProBuild") contracted with Hartford to provide disability insurance to ProBuild's employees. (Compl., ¶2). Pursuant to the contract, Hartford offered ProBuild employees a standard benefit plan which paid disability benefits for a limited period of time. (Compl., ¶9). Under this standard plan, the employer paid the premiums for disability insurance coverage. *Id*. Hartford also offered an extended LTD benefit plan in which ProBuild employees could participate at their own individual expense. (Compl., ¶10). The extended LTD benefit plan paid a monthly benefit that was equal to the difference between the disabled employee's monthly salary and the monthly amount of any "Other Income" including Social Security Disability ("SSD") insurance benefits. *Id*. The extended LTD benefit plan paid the

employee through her Social Security retirement age. *Id*. Plaintiff Tina Wright, a North Carolina resident, was employed by ProBuild as a truss designer. (Compl., ¶7). Plaintiff enrolled in, and paid for, the extended LTD coverage. (Compl., ¶11).

In 2008 Plaintiff developed a MRSA infection that spread to other parts of her body. (Compl., ¶12). Plaintiff was treated with antibiotics but suffered severe side effects from the treatment, including sepsis, osteomyelitis, gastrointestinal symptoms, a mitral valve disorder, bone marrow suppression, migraine headaches, anemia, and degenerative disc disease. *Id*. Plaintiff has been hospitalized several times with these conditions but her complications have never been fully resolved. *Id*. In April of 2009, Plaintiff's primary care physician determined that Plaintiff was not strong enough for ordinary activity. (Compl., ¶13).

Hartford began paying Plaintiff long-term disability benefits starting on December 17, 2008. (Compl., ¶15). On July 4, 2010, Hartford notified Plaintiff that it was investigating if she would qualify for benefits after December 17, 2010. (Compl., ¶16). On May 2, 2011, the Social Security Administration, through an Administrative Law Judge, found that Plaintiff had been disabled since June 20, 2008. (Compl., ¶17). Plaintiff alleges that Hartford made payments during the months of March, April, May, June, and July of 2011 in an amount scheduled under the *standard* disability insurance plan, but made a payment to Plaintiff on July 21, 2011 in an amount scheduled under the *extended* LTD disability insurance plan. (Compl., ¶¶18, 19) (emphasis added). Plaintiff has not received any payments from Hartford since July 21, 2011. (Compl., ¶20).

On July 27, 2011, Hartford sent Plaintiff a letter notifying her of Hartford's belief that it had overpaid on the policy. (Doc. 5-3 at 2). Hartford demanded for reimbursement from the Plaintiff. *Id*. Hartford also requested from Plaintiff her Social Security Disability Notice of Award. *Id*. Hartford sent three similar letters to Plaintiff on March 9, 2012; April 5, 2012; and

December 2, 2013. *Id*. After Plaintiff provided Hartford with her SSD Notice of Award, Hartford recalculated the balance and determined that the overpayment from Plaintiff's disability coverage was $39,022.34. *Id*. at 9. Hartford's letter states that "further LTD benefit payments will not be issued until we receive [Plaintiff's] full repayment of the overpayment." *Id*. Plaintiff does not allege that she has reimbursed Hartford. Hartford contends that it is permitted to withhold LTD benefits under the disability policy until the overpayment is reimbursed. (Doc. 5 at 2).

Hartford's long-term disability policy contains the following language:

> We have the right to recover from You any amount that we determine to be an overpayment. You have the obligation to refund to us any such amount…If reimbursement is not made in a timely manner, Hartford Life has the right to:…(2) reduce or offset against any future benefits payable to You or Your survivors.

Doc. 5-2 at 32.

The policy also contains the following language regarding appeals:

> On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 60 days from the date you received your claim denial.

Doc. 5-2 at 77.

Plaintiff has filed suit against Hartford claiming that Defendant is liable to pay past and future benefits to Plaintiff under 29 U.S.C. § 1132(a)(1)(B). (Compl., ¶3 at 4). Plaintiff further alleges that "Defendant's failure to explain its decision regarding Plaintiff's benefits and Defendant's failure to give proper notice is a breach of its fiduciary duty in violation of 29 U.S.C. § 1333".[1]

---

[1] Plaintiff cites this action as falling under 29 U.S.C. § 1333. (Compl., ¶4 at 4). Problematically, 29 U.S.C. § 1333 is not an existing part of the ERISA statute. The Court will treat this error as harmless, however, for 29 U.S.C. § 1133 provides that every employee benefit plan shall: "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant; and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the

## II. STANDARD OF REVIEW

The Court can dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), this Court must "take the facts in the light most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). Although "heightened fact pleading of specifics" is not required for a complaint to survive a motion to dismiss under Rule 12(b)(6), the allegations must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering the plausibility of a claim, the Court must "draw on its judicial experience and common sense" to determine whether the well-pleaded facts of the complaint "permit the Court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must disregard conclusory statements unsupported by factual allegations, but "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. Determining whether a claim states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## III. DISCUSSION

ERISA is a "comprehensive and reticulated statute" that governs retirement and other employee benefit plans. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citation and internal

---

claim." 29 U.S.C. § 1133. Section 1133 adequately covers Plaintiff's cause of action such that it is clear that this was the intended statute, and the Court will treat all references to § 1333 in Plaintiff's argument as referring to § 1133. In any case, Defendant does not challenge this citation in their Motion to Dismiss.

quotation marks omitted). ERISA provides remedies to plan beneficiaries who believe that they have been wrongly denied benefits. *Id.* Additionally, fiduciaries under ERISA are assigned a number of detailed duties and responsibilities, which include "the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142-43 (1985).

Plaintiff brings this action for long-term disability benefits under § 502(a)(1)(B) of ERISA. Plaintiff also brings an action for equitable relief and breach of fiduciary duty against Hartford under § 502(a)(3). The Court finds that the Plaintiff states a claim for benefits but fails to state a claim for breach of fiduciary duty.

**A. Plaintiff states a claim for benefits because she alleges that she was eligible for payments under the extended LTD disability plan and received, at times, payments under the standard disability plan.**

Plaintiff brings this action for long-term disability benefits under 29 U.S.C. § 502(a)(1)(B) of ERISA. Pursuant to § 502(a), a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan…." 29 U.S.C. § 1132(a)(1)(B). To state a claim under § 502(a)(1)(B), the Plaintiff must plausibly allege that: (1) she was eligible for benefits under the plan; (2) that Defendant wrongfully denied her benefits; and (3) that in doing so, Defendant violated § 502(a)(1)(B). The Court finds that the Plaintiff has adequately stated a claim for benefits.

A court may consider evidence in determining whether to dismiss a complaint if the evidence is integral to and explicitly relied on in the complaint and the plaintiff does not challenge its authenticity. *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). When considering

a motion to dismiss an ERISA action, the Court can consider the ERISA policy as being integral to the allegations giving rise to a claim for benefits. *McRae v. Rogosin Coverters, Inc.*, 301 F.Supp.2d 471, 476 n.2 (M.D.N.C. 2004) (because the plaintiff's claim for benefits was reliant on the plan, it was proper for the court to consider the plan even though the plan was never attached to the complaint). Indeed, the terms of the policy and the parties' obligations under it comprise the basis of this lawsuit. Additionally, the Affidavit of Terrance Page can be considered by the Court, because the affidavit is limited to authenticating the copy of the policy and attesting that it is the relevant policy in this case. *See Breyan v. U.S. Cotton LLC Long Term Disability Plan*, No. 3:12-CV-491-RJC-DCK, 2013 WL 55367795, at * 5 (W.D.N.C. Oct. 7, 2013).

The letters sent by Hartford to the Plaintiff present a slightly more difficult case. The Plaintiff alleges that "The Hartford has alleged that the Plaintiff was overpaid and the Hartford has demanded repayment of benefits from the Plaintiff" as well as "The Hartford has continued to request information from the Plaintiff." (Compl., ¶¶21, 22). While these assertions do not directly state that Hartford did so in the form of the letters attached to Hartford's Motion as Exhibit B, these allegations in Plaintiff's Complaint are nonetheless a direct reference to the letters. Importantly, the Plaintiff never questions the authenticity of these letters in her opposition Motion, nor does she challenge the Court's consideration of these documents. *See also Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002) (citing *New Beckley Mining Corp. v. Int'l Union, UMWA*, 18 F.3d 1161, 1164 (4th Cir. 1994). As such, the Court will consider Exhibit B as incorporated by reference into the Plaintiff's Complaint and consider the letters under Defendant's Motion to Dismiss.

In *Makar v. Health Care Corp. of Mid-Atlantic*, the Fourth Circuit Court of Appeals held that an "ERISA claimant is required to exhaust the remedies provided by the employee benefit

plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132." 872 F.2d 80, 82 (4th Cir. 1989); *see also Ford v. Hartford Life & Acc. Ins. Co.*, No. 3:08-CV-281 2009 WL 963594 at *6 (W.D.N.C. April 8, 2009) (holding that "[a]n ERISA claimant is required to exhaust the remedies provided by the employee benefit plan in which she participates as a prerequisite to bringing an ERISA action to enforce benefits thereunder or to otherwise seek redress for the denial thereof"). Benefit plans covered by ERISA are required to provide internal dispute resolution procedures for claimants whose benefits have been denied. 29 U.S.C. § 1133(2). Hartford's long-term disability policy contains the following internal dispute resolution procedures:

> On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 60 days from the date you received your claim denial.

Doc. 5-2 at 77.

Hartford argues that Plaintiff has not exhausted her administrative remedies and, therefore, cannot bring this action in court. Plaintiff alleges, however, that Hartford has not issued a written decision in Plaintiff's case from which the Plaintiff can file an administrative appeal, and therefore Plaintiff has not had the opportunity to pursue and exhaust her administrative remedies (Compl., ¶24). Assuming the allegations of the Complaint to be true, the Court agrees that the Plaintiff has not received a written notification under 29 C.F.R. § 2560.503-1(g) and is deemed to have exhausted the administrative remedies under the plan pursuant to 29 C.F.R. § 2560.503-1(I).[2]

---

[2] "In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1. The plan fails to establish or follow claims procedures consistent with ERISA when the insurance company fails to provide proper notice. *See, e.g. Huerta v. AT&T Umbrella Benefit Plan No. 1*, No. 3:11-CV-01673-JCS, 2012 WL 4935548 at *6 (N.D.

An adverse benefit determination means any of the following: "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit[.]" 29 C.F.R. § 2560.503-1(m)(4). ERISA requires that plan providers furnish plan beneficiaries with notice of adverse benefit determinations that set forth certain criteria "in a manner calculated to be understood by the claimant." 29 C.F.R. § 2560.503-1(g). The notification must include the following: "(i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." *Id*. Indeed, in the policy, Hartford repeats this exact language. (Doc. 5-2 at 32). The Court first turns to whether Hartford made an adverse benefit determination.

Defendant claims that it made no adverse benefit determination following the investigation of which it informed the Plaintiff on July 4, 2010. Hartford is correct in asserting that § 2560.503-1(g) does not require that the plan provider notify the beneficiary that she continues to be eligible for benefits. Plaintiff does not allege that she stopped receiving benefits because of an adverse benefit determination arising out of that investigation. Instead, she admits that the investigation was to determine eligibility for benefits after December 17, 2010, and that Hartford continued to pay her monthly benefits for six months past that date, indicating that Hartford made no adverse determination during its investigation.

---

Cal. October 17, 2012); *Halo v. Yale Health Plan*, 49 F.Supp.3d 240, 266 (D.Conn. 2014) (finding that the claimant was deemed to have exhausted her administrative remedies where denial notices failed to comply with ERISA notification requirements).

Instead, as both parties admit, Hartford has stopped paying the Plaintiff benefits because the Plaintiff has not reimbursed Hartford for an alleged overpayment. By the terms of 29 C.F.R. § 2560.503-1(m)(4) an adverse benefit determination is broader than a denial of benefits and includes a reduction in monthly benefit payments. Hartford's own policy refers to a reduction in benefits.[3] Hartford also uses the word "reduction" in their letters to the Plaintiff.[4] Hartford was reducing Plaintiff's benefits by the amount of her Social Security Benefits and then reducing her benefits until she repaid what Hartford believed she owed. By the plain language of § 2560.503-1(m)(4), Hartford's reduction of Plaintiff's benefits, whether justified by the policy or not, constitutes an adverse benefit determination subject to the notification requirements of § 2560.503-1(g).

Such a finding is also consistent with decisions from sister courts. In finding that a determination of overpayment constitutes an adverse benefit determination, the District of New Jersey noted that "the notion of what, as a matter of law, relates to a benefit plan under ERISA has always been a broad one" and that "to not consider the terms of the plan, even in seemingly clear-cut circumstances of overpayment, would be to accept the insurer's overpayment determination at face value." *Premier Health Center, P.C. v. UnitedHealth Group*, 292 F.R.D. 204, 222 (D.N.J. 2013).[5] The Northern District of Illinois similarly held that withholding benefits pending recoupment of an overpayment is a reduction of benefits within the meaning of § 2560.503-

---

[3] "If reimbursement is not made in a timely manner, Hartford Life has the right to:…(2) *reduce* or offset against any future benefits payable to You or Your survivors, including the Minimum Monthly Benefits, until full reimbursement is made." (Doc. 5-2 at 32) (emphasis added).

[4] "Please remember that this benefit remains subject to *reduction* by the amount of additional Other Income Benefits your client may receive." (Doc. 5-3 at 10) (emphasis added).

[5] The court also noted that "the question of whether an overpayment determination amounts to an A[dverse] B[enefit] D[etermination] under ERISA is not a common one." *Premier Health Center*, 292 F.R.D. at 222.

1(m)(4). *Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association*, No. 09 C 5619, 2014 WL 1276585 at *13 (N.D. Ill. March 28, 2014); *see also Huerta*, No. 3:11-CV-01673-JCS, 2012 WL 4935548 at *6.

After determining that an adverse benefit determination was made, the Court now turns to whether Hartford satisfied the notification requirements. Again, both § 2560.503-1(g) and Hartford's own policy require Hartford to set forth a description of the plan's review procedures, time limits for said procedures, and a description of the claimant's right to bring a civil action under ERISA. Nowhere in Hartford's letters does it explicitly provide any of this information, nor does it notify Plaintiff that she must exhaust her administrative appeals before commencing litigation. This case is thus distinguished from *Makar* and *Ford*, *supra*, as well as *Gayle v. United Parcel Service, Inc.*, 401 F.3d 222, 226 (4th Cir. 2005), all cited by the Defendant as supporting the exhaustion requirement. In all three cases, the insurance provider notified the beneficiary of the important information that Hartford left absent from its letters.[6]

Plaintiff has alleged that Hartford has paid her sometimes at the rate in the standard disability plan and at other time or times at the rate in the extended disability plan. The Court agrees with the Plaintiff that this allegation raises an issue of fact as to whether Hartford has been paying the Plaintiff according to the criteria to which she is entitled to under the plan, or according to some other criteria. Hartford has not admitted the discrepancy, and thus has not sent Plaintiff any written document explaining the discrepancy that could form the basis of an administrative appeal under the policy.

---

[6] Hartford also failed to cite to specific plan provisions justifying their actions in recouping the overpayment, contra the insurance providers in the cited cases. The fact that this information is included in the plan is insufficient under § 2560.503-1(g) if the information is not also included in the insurance company's notification.

Defendant argues that the Court cannot assess Plaintiff's objections without an administrative review by Hartford of the claim. The Defendant once again cites to *Makar*, but the facts in *Makar* differ from those of the present case. In *Makar*, the district court dismissed the action, leaving the Fourth Circuit court with no factual administrative record. A factual record can be developed in this case through the process of discovery. Plaintiff's allegations are enough to state a claim that she is owed benefits by Hartford, and further proceedings are appropriate to determine if she is in fact owed benefits. By failing to adequately notify the Plaintiff of her rights, the Defendant has failed to supply the necessary premise for an administrative appeal. The Defendant's inaction cannot be allowed to burden Plaintiff further with additional delay for bringing an action in court.

As the Seventh Circuit has stated, enforcement of the exhaustion requirement is within the discretion of the federal district court. *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008). While exhaustion is often required, the Court finds that the Plaintiff has not received written notice of an adverse benefit determination consistent with § 2560.503-1(g), and the Plaintiff is therefore deemed to have exhausted her remedies under § 2560.503-1(I). The Court also finds that Plaintiff's allegations that she has received benefits under varying or perhaps arbitrary criteria states a claim that she is owed benefits under the plan. Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for benefits is denied.

### B. Plaintiff does not state a claim for breach of fiduciary duty that can give rise to equitable relief because a §502(a)(3) action cannot be brought when a §502(a)(1)(B) action can provide adequate relief.

Plaintiff asks for equitable relief under § 502(a)(3) of ERISA due to an alleged breach of fiduciary duty on the part of Defendant. § 502(a)(3) is a "catchall" provision that serves "as a

safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Section 502(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). To state a claim for breach of fiduciary duty under § 502(a)(3), the Plaintiff must establish that: (1) the Defendant was a fiduciary of the ERISA plan; (2) the Defendant breached its fiduciary responsibilities under the plan; and (3) injunctive or other equitable relief is necessary to remedy the breach. *Breyan v. U.S. Cotton, LLC Long Term Disability Plan*, No. 3:12-CV-491-RJC-DCK, 2014 WL 991946 at *3 (W.D.N.C. March 13, 2014). The Court will address the three elements in turn.

"An ERISA fiduciary is "any individual who de facto performs specified discretionary functions with respect to the management, assets, or administration of a plan." *Moon v. BWX Technologies, Inc.*, 577 Fed.Appx. 224, 229 (4th Cir. 2014) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996). Defendant does not challenge that it operated as a fiduciary to Plaintiff under the plan and this Court so finds that Hartford is a fiduciary to the Plaintiff subject to the duties articulated in 29 U.S.C. § 1104(a).[7]

Plaintiff contends that Hartford breached its fiduciary duty when it violated § 1133 by not notifying her of any conclusion reached in the investigation that began on July 4, 2010, into her eligibility for benefits after December 17, 2010. Plaintiff argues that failure to complete the administrative process for three years and failing to notify the Plaintiff of the outcome, "all the

---

[7] 29 U.S.C. § 1104 sets out the duties that a fiduciary owes to a beneficiary under ERISA.

while reimbursing itself for an overpayment while the statute of limitations[8] was running" (Doc. 11 at 5) is a breach of Defendant's fiduciary duty.

Other circuit courts of appeals, as well as other district courts in the Fourth Circuit, have found that recoupment of an alleged overpayment is not a breach of fiduciary duty that can give rise to an ERISA claim when the right to recoup is unambiguously spelled out in the plan. *See, e.g., Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1377 (6th Cir. 1996); *Greig v. Metropolitan Life Ins. Co.*, 980 F.Supp. 169, 171 (W.D.V.A. 1997).[9] Plaintiff's claim, however, does not rest solely on Defendant's recoupment of payments. Rather, the Plaintiff alleges that the Defendant breached its fiduciary duty through a failure to notify. A fiduciary's duty includes "an affirmative duty to inform when the trustee knows that silence might be harmful." *In re Wachovia Corp. ERISA Litig.*, 3:09-CV-262, 2010 WL 3081359 at 15 (W.D.N.C. Aug. 6, 2010) (quoting *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1994). As previously discussed, Hartford did not comply with notice standards under 29 C.F.R. § 2560.503-1(g). Silence on Hartford's part of the relevant appeals procedures or reasons for an alleged discrepancy - assuming the Plaintiff's allegations as true - can plausibly be deemed to be harmful to the Plaintiff giving rise to a breach of fiduciary duty action.

The Court now turns to whether equitable relief is necessary to remedy Plaintiff's injury. Defendant argues that Plaintiff's § 502(a)(3) claim is not cognizable because equitable relief is not

---

[8] Plaintiff here cites N.C. Gen. Stat. §52-1. §52-1 is titled "Property of married persons secured." It is likely that Plaintiff intended to cite §1-52 of the North Carolina General Statutes, which establishes a three year statute of limitations for many claims.

[9] The policy is clear on Hartford's rights in the event of an overpayment: "We have the right to recover from You any amount that we determine to be an overpayment. You have the obligation to refund to us any such amount…If reimbursement is not made in a timely manner, Hartford Life has the right to:…(2) reduce or offset against any future benefits payable to You or Your survivors." (Doc. 5-2 at 32).

appropriate where Congress has elsewhere provided adequate relief for a beneficiary's injury, such as a claim for benefits under § 502(a)(1)(B). *Varity*, 516 U.S. at 515 ([W]here Congress elsewhere provided adequate relief of a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'").[10]

The Fourth Circuit Court of Appeals and this Court have also held that a § 502(a)(3) claim is inappropriate where § 502(a)(1)(B) can provide relief. *See, e.g. Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 106-107 (4th Cir. 2006) (dismissing plaintiff's ERISA § 502(a)(3) claims based upon defendant's flawed claims administrative procedures); *Coyne & Delaney Co. v. Blue Cross & Blue Shield of Va.*, 102 F.3d 712 (4th Cir. 1996) (holding that "[t]o permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading"); *Hoyle v. Liberty Life Assur. Co. of Boston Inc.*, 291 F.Supp.2d 414, 418 (W.D.N.C. 2003) (dismissing plaintiff's breach of fiduciary duty claim based on a wrongful denial of benefits). As the Supreme Court said in *Great-West Life & Annuity Ins. Co. v. Knudson*, ERISA's "carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." 534 U.S. 204, 209 (2002).

When determining whether a plaintiff has been wrongly denied benefits, the court reviews a fiduciary's conduct in denying benefits. A benefits determination under § 1132(a)(1)(B) should consider the fiduciary's decision making process and "the fiduciary's motives and any conflict of interest it may have." *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). Because the fiduciary's conduct is woven into a claim for benefits, bringing multiple causes of action for the same conduct asking for the same outcome is duplicative,

---

[10] The *Varity* § 502(a)(3) claim was not dismissed because it was held that the claimants had no avenue for relief under § 502(a)(1)(B).

rendering equitable relief unnecessary. This Court warned against plaintiffs attempting to repackage benefit claims as claims for breach of fiduciary duty in this manner in *Esposito v. Wal-Mart Stores, Inc.*, No. 1:13-CV-98-MR, 2014 WL 4104731 at *2 (W.D.N.C. August 19, 2014).

Plaintiff seeks equitable relief in the form of an injunction against "Defendant from engaging in further violations of ERISA" (Compl., at 4). But this equitable relief "is pursued with the ultimate aim of securing the remedies afforded by § 1132(a)(1)(B)." *Korotynska*, 474 F.3d at 108. Further, as the District of South Carolina noted "simply because one [may be] unable to prevail on the merits under a § 1132(a)(1)(B) claim does not mean such a claim is not an 'adequate remedy.'" *Johnson v. Michelin North America*, 658 F.Supp.2d 732, 744 (D.S.C. 2009). Plaintiff's claim for equitable relief arises out of Hartford's handling of Plaintiff's LTD benefit claim, and thus the Court finds that monetary relief under § 502(a)(1)(B) would adequately remedy Plaintiff's injury and that an additional claim under § 502(a)(3) is duplicative and unnecessary. The Defendant's Motion to Dismiss Plaintiff's claim for equitable relief is granted.

IV. ORDER

**IT IS, THEREFORE, ORDERED,** that Defendant's Motion to Dismiss is hereby **GRANTED** in part and **DENIED** in part.

Signed: July 23, 2015

Richard L. Voorhees
United States District Judge